# In the United States Court of Federal Claims

No. 22-1471
(Filed: April 6, 2023)

```
*****************************************
GOLDEN IT, LLC,                        *
                                       *
              Plaintiff,               *
                                       *
       v.                              *
                                       *       Post-Award Bid Protest; Motion
THE UNITED STATES,                     *       for Judgment on the
                                       *       Administrative Record; Unequal
              Defendant,               *       Treatment; Unstated Evaluation
                                       *       Criteria.
       and                             *
                                       *
ITCON SERVICES, LLC,                   *
                                       *
              Defendant-Intervenor.    *
*****************************************
```

*Jon D. Levin*, Maynard, Cooper & Gale, PC, Huntsville, AL, counsel for Plaintiff. With whom were *W. Brad English*, *Emily J. Chancey*, *Joshua B. Duvall*, and *Nicholas P. Greer*, of counsel.

*Rafique O. Anderson*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Elin M. Dugan*, Senior Counsel, Office of the General Counsel, U.S. Department of Agriculture, of counsel.

*Eric A. Valle*, PilieroMazza PLLC, Washington, DC, counsel for Defendant-Intervenor. With whom were *Jonathan T. Williams*, *Katherine B. Burrows*, and *Kevin T. Barnett*, of counsel.

## OPINION AND ORDER

**Dietz, Judge.**

      Golden IT, LLC ("Golden IT") protests a decision by the United States Department of Agriculture ("USDA") to award a Blanket Purchase Agreement ("BPA") for technology sustainment support services to eight offerors, including ITCON Services, LLC ("ITCON"). Golden IT challenges the USDA's evaluation of its proposal and source selection decision as arbitrary, capricious, and otherwise not in accordance with law. Based on the administrative record, the Court finds that, although Golden IT has demonstrated that certain portions of the USDA's evaluation were arbitrary, capricious, and not in accordance with law, it has not demonstrated that it was prejudiced by the USDA's errors. Accordingly, Golden IT's motion for judgment on the administrative record is **DENIED,** and the government's and ITCON's respective cross-motions for judgment on the administrative record are **GRANTED**.

## I.    BACKGROUND

### A.    Overview of the RFQ and Evaluation Criteria

On May 26, 2022, the USDA issued a competitive request for quotes ("RFQ") seeking sustainment support services for technology systems and applications from vendors on the General Service Administration's ("GSA") Multiple Award Schedule 54151S, Information Technology Professional Services. AR 9,[1] 122.[2] The scope of the services required that the contractor have a "working and holistic understanding and knowledge of [the] application hosting environment(s)" and that the contractor be able to "maintain and manage USDA database environments as well as support minor database changes." AR 123. The RFQ included a Performance Work Statement ("PWS"), AR 141, which contained a sample call order for sustainment support services, AR 146. The PWS contained a table ("Table 2") that listed the technology systems and applications that offerors would be required to support. AR 150-54.

The USDA intended to award multiple BPAs using the procedures set forth in Federal Acquisition Regulation ("FAR") 8.4. AR 122. The RFQ emphasized that "the main use of the BPAs will come from . . . purchasing for [Food and Nutrition Services ("FNS")[3]]," but stated that the BPA "will be open . . . to use for our other customers as well." *Id*. (emphasis omitted). The estimated volume of purchases under the BPA was "up to $45,000,000.00 or more depending on the Government's needs[,]" AR 125, and the anticipated period of performance was 5 years, AR 130. The USDA expected to award six BPAs, "[t]hree to Small Disadvantaged Business[es] (["SDB"]) and [t]hree to Small Business[es] (["SB"])." AR 135. Offerors were required to specify the business category, SDB or SB, under which they were submitting an offer. AR 123.

The RFQ provided that the USDA would conduct the procurement through a phased proposal submission approach. AR 130. In Phase 1, the USDA would focus on prior experience, and in Phase 2, it would focus on technical approach, management approach, price, and BPA labor rates. AR 133. For Phase 1, offerors were required to submit a cover letter and a prior experience narrative. *Id*. The RFQ provided that prior experience should be demonstrated by "a minimum of two [] contracts/task orders, maximum of three, performed within the last three [] years." AR 134. It further stated that the demonstrated prior experience "should include management and coordination of multiple support teams and/or subcontractor relationships that resulted in achieving quality performance under contracts that were of a comparable magnitude, size, scope, and complexity to the services described in the PWS." *Id*. The evaluation of an offeror's prior experience consisted of reviewing it for "Complexity (difficulty), Magnitude ($

---

[1] The Court cites to the Administrative Record filed by the government at [ECF 24] as "AR ___."

[2] The USDA amended the RFQ three times. *See* AR 2-68 (Initial RFQ); AR 69-96 (First Amended RFQ); AR 97-118) (Second Amended RFQ); AR 119-74 (Third Amended RFQ). The Court cites to the latest version of the RFQ.

[3] FNS administers fifteen nutrition assistance programs for the USDA, including: the Supplemental Nutrition Assistance Program ("SNAP"); the Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC"); the National School Lunch Program; and the Child and Adult Care Feeding Program. AR 122.

value), Similarity (task similarity) and Scope (functions and features) as compared to the sustainment services described in the Performance Work Statement." *Id*.

For Phase 2, offerors were required to submit a written technical package with management approach, proposed price based on a sample call order, and proposed BPA labor rates. AR 133, 136-37. To show their technical approach, offerors were required to "demonstrate[] a substantive understanding of the scope, [and] complexity associated with the objectives described in the [PWS]." AR 136. Additionally, offerors were required to include "a substantial narrative that the [offeror] has first ha[n]d experience using a majority of the technology categories listed in Table 2 of the PWS." *Id*. To show their management approach, offerors were required to "submit a management plan for the requirements . . . outlined in the PWS." *Id*. The management plan had to "provide a clear chain of responsibility, quality control plan, cost control method, contract administration, and adequate, qualified staff resources." *Id*. The USDA would evaluate price quotes by comparing proposed prices to one another and to the Independent Government Cost Estimate ("IGCE"). AR 137. The RFQ stated that quoted prices should conform to the respective offeror's GSA schedule prices. AR 137. However, the RFQ also stated that "[o]fferors are strongly encouraged to provide a discount below their GSA schedule pricing." *Id*.

The RFQ stated that the USDA would evaluate the offerors by separating the SBs and the SDBs into two business size categories to ensure a competition "on equal ground" and to ensure "the small business goals of this procurement of 50% SDB and 50% SB" were reached. AR 138. The USDA would evaluate each offeror's prior experience under the Phase 1 submissions, assign a confidence rating, and advise the offerors "determined to be most capable" to proceed to Phase 2. AR 135, 138. The USDA would then accept Phase 2 submissions, evaluate each offeror's technical and management approach, and assign a second confidence rating. AR 138. The confidence ratings used for Phase 1 and Phase 2 were defined as follows:

| High Confidence (Low Risk) | The Government has **high confidence** the vendor understands the requirement, proposes a sound approach, and will be successful in performing the contract with **little or no** Government intervention. |
|---|---|
| Some Confidence (Moderate Risk) | The Government has **some confidence** the vendor understands the requirement, proposes a sound approach, and will be successful in performing the contract with **some** Government intervention. |
| Low Confidence (High Risk) | The Government has **low confidence** the vendor understands the requirement, proposes a sound approach, or will be successful in performing the contract **even with** Government intervention. |

AR 139. The USDA would then evaluate price and use the two confidence ratings for the performance price trade-off decision. AR 138. The RFQ stated that "Prior Experience and Written Technical and Management Approach, when combined, are more important than price . . . [h]owever, Written Technical and Management Approach, [is] more important than Prior Experience." AR 139.

The Source Evaluation Board ("SEB") would "provide its final report and recommendation to the Source Selection Authority [("SSA")] and a final decision [would] be made to select the responsive, responsible offeror whose quote is determined to be the best

overall value to the Government." AR 138. The RFQ stated that "[t]he SSA's decision shall be documented, and the documentation shall include the rationale for any business judgments and trade-offs made or relied on by the SSA, including benefits associated with the additional costs (if applicable)." *Id.*

### B.    The Evaluation, Award Decision, and Protest

The USDA received Phase 1 submissions from 23 vendors for the SB category and 31 vendors for the SDB category. AR 354-55. Golden IT and ITCON each made a Phase 1 submission for the SDB category. AR 266, 275. After evaluating the Phase 1 submissions, the SEB selected ten offerors—five SB and five SDB—to proceed to Phase 2, including ITCON. AR 357. Golden IT was advised not to proceed to Phase 2 after it received a "some confidence" rating for its prior experience. AR 356, 374. Despite the USDA's advisement, Golden IT elected to proceed. AR 376. Based on Golden IT's Phase 2 submission, the SEB assigned Golden IT a "some confidence" rating for its technical package with management approach. AR 1155-56. Additionally, the SEB expressed concerns with Golden IT's proposed pricing because it was "significantly lower than the IGCE" and "gave the impression of not acquiring the correct caliber of staff required for this requirement." AR 1165. The SEB assigned the following ratings to the Phase 2 offerors:

**Small Business:**

| Vendor | Phase 1, Prior Experience Rating | Phase 2, Technical Package Rating | BPA Example Call Order Total Priced |
|---|---|---|---|
| 4SB-PYRAMID SYSTEMS, INC | High Confidence | High Confidence | [* * *] |
| 5SB-SYDANTECH LLC | High Confidence | Some Confidence | [* * *] |
| 10SB-VENTERA CORPORATION | High Confidence | High Confidence | [* * *] |
| 13SB-A SQUARE GROUP LLC | High Confidence | High Confidence | [* * *] |
| 14SB-CAPITAL TECHNOLOGY GROUP, LLC | High Confidence | High Confidence | [* * *] |

**Small Disadvantaged Business:**

| Vendor | Phase 1, Prior Experience Rating | Phase 2, Technical Package Rating | BPA Example Call Order Total Priced |
|---|---|---|---|
| 5SDB-CENTENNIAL TECHNOLOGIES INC | Some Confidence | Some Confidence | [* * *] |
| 7SDB-ITCON SERVICES LLC | High Confidence | High Confidence | [* * *] |

| 8SDB-DYNAMO TECHNOLOGIES LLC | High Confidence | High Confidence | [* * *] |
|---|---|---|---|
| 9SDB-EASY DYNAMICS CORPORATION | High Confidence | High Confidence | [* * *] |
| 16SDB-CONVISO INC | High Confidence | High Confidence | [* * *] |
| 19SDB-ARMEDIA LLC | High Confidence | High Confidence | [* * *] |
| 27SDB-GOLDEN IT LLC | Some Confidence | Some Confidence | [* * *] |

AR 1657-58. Ultimately, the SEB recommended that awards be made to eight offerors: Pyramid Systems, Inc.; Ventera Corporation; A Square Group LLC; Capital Technology Group, LLC; ITCON; Conviso, Inc.; Armedia LLC; and Dynamo Technologies, LLC. AR 1163. When making their recommendation, the SEB explained "[w]hile we recognize this is more than the anticipated 6, based off the evaluation criteria it panned out that 8 were High for both categories." *Id.* (emphasis omitted). After reviewing the SEB recommendation, the SSA concurred and determined "that the quotes from the 8 vendors represent the best value to the Government[.]" AR 1666. The SSA wrote a memorandum to file providing justification for expanding the number of awards from 6 offerors to 8 offerors. *See* AR 1652. The SSA stated that "we could not find any logical factors to eliminate any of those 8 based off what they proposed" and that "[e]liminating 2 vendors that had High ratings in both factors lends itself to higher risk to the government of protest." *Id.* The SSA further elaborated that "[a]n additional benefit to adding two more BPAs is that it would allow for more bandwidth of experienced vendors." *Id.* On September 23, 2022, the USDA made award to the eight offerors. *See* AR 1667-786.

Golden IT filed a bid protest in this Court on October 7, 2022, challenging the USDA's evaluation and source selection decision as arbitrary, capricious, and contrary to law. Compl. [ECF 1]. ITCON intervened on October 14, 2022. *See* Mot. to Intervene [ECF 20]. After the Court established a briefing schedule, Golden IT filed a motion for judgment on the administrative record on December 23, 2022. *See* Pl.'s Mot. for J. on the Admin. R. [ECF 27]. On January 27, 2023, ITCON filed a cross-motion for judgment on the administrative record. *See* Def.-Intervenor Cross-Mot. for J. on the Admin. R. [ECF 33]. The government filed its cross-motion for judgment on the administrative record on February 1, 2023. Def.'s Cross-Mot. for J. on the Admin. R. [ECF 35]. The motions are fully briefed, and the Court held oral argument on March 1, 2023. *See* Scheduling Order [ECF 22].

## II.    LEGAL STANDARDS

The Tucker Act grants this Court "jurisdiction to render judgment on an action by an interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1) (2018). The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process[,]" including "objections to an award[.]" *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380 (Fed. Cir. 2012).[4]

---

[4] The parties to this litigation do not challenge the Court's jurisdiction over Golden IT's complaint or Golden IT's standing as an interested party. However, the Court "has an obligation to satisfy itself that jurisdiction is proper[.]"

Under Rule 52.1 of the Rules of the United States Court of Federal Claims, a party may file a motion for judgment on the administrative record to assess whether a federal agency acted in accordance with the legal standards governing the decision under review. *Agile Def., Inc. v. United States*, 143 Fed. Cl. 10, 17 (2019). This motion "is often an appropriate vehicle to scrutinize an agency's procurement actions because such cases typically involve interpretation of contract documents or regulations, thereby presenting no disputed issues of material fact." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004). On a motion for judgment on the administrative record, the parties are limited to the administrative record, and the court makes factual findings as if it were conducting a trial on the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). The court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

This Court reviews agency decisions in bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). This standard permits a court to set aside an agency's contracting decision if the protestor shows it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018); *Bannum*, 404 F.3d at 1351. "Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency[] but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 559 (2012), *aff'd*, 720 F.3d 901 (Fed. Cir. 2013) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A procurement decision is rational if "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1333. But "that explanation need not be extensive." *Bannum, Inc. v. United States*, 91 Fed. Cl. 160, 172 (2009) (citing *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973)). The protestor has the burden to show by a preponderance of evidence the arbitrary and capricious nature of the agency decision. *Mortg. Contracting Servs., LLC v. United States*, 153 Fed. Cl. 89, 124 (2021). "[A]n offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably." *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 717-18 (2011) (*citing Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 384 (2003)).

An agency decision is arbitrary and capricious when it results from unequal treatment of the offerors. *See CliniComp Int'l Inc., v. United States*, 117 Fed. Cl. 722, 742 (2014) (stating that "unequal treatment is fundamentally arbitrary and capricious, and violates . . . full and open competition"). A claim of unequal treatment is derived from the FAR requirement that "[a]ll contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same." FAR 1.102-2(c)(3). An offeror is treated unequally when "the agency unreasonably downgraded its proposal for deficiencies that were 'substantively

*L-3 Commc'ns. Corp. v. United States*, 99 Fed. Cl. 283, 288 (2011) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 130 (2010)). Based on Golden IT's complaint and the administrative record filed by the government, the Court is satisfied that it has jurisdiction to render judgment on Golden IT's challenge to the USDA's evaluation and source selection decision and that Golden IT has standing to bring its challenge.

indistinguishable' or nearly identical from those contained in other proposals." *Office Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020). If a protestor demonstrates that the relevant proposals were substantively indistinguishable, a reviewing court may compare and analyze "the agency's treatment of proposals without interfering with the agency's broad discretion in these matters." *Id.*

An agency decision is also arbitrary and capricious if the decision is a product of the agency's application of unstated evaluation criteria. *See NVE, Inc. v. United States*, 121 Fed. Cl. 169, 180 (2015) (stating that an offeror can challenge an agency's analysis as "arbitrary, capricious, or an abuse of discretion" when the agency relies on unstated evaluation criteria). A claim that an agency relied upon unstated evaluation criteria in the evaluation of a proposal is based on instruction in the FAR that "[a]n agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the Solicitation." FAR 15.305(a). To demonstrate that an agency applied unstated evaluation criteria, "a protester must show that . . . the procuring agency used a significantly different basis in evaluating the proposals than was disclosed[.]" *Banknote*, 56 Fed. Cl. at 387 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

While the APA standard calls for considerable deference to the agency, *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010), "it is not a rubber stamp." *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 742 (2000) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 290 (1st Cir.1995)). A court may set aside an agency's procurement decision if the decision lacked a rational basis, or the procurement procedure involved a violation of regulation. *Impresa*, 238 F.3d at 1332; *see also Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1343 (Fed. Cir. 2021). Nevertheless, if the reviewing court finds that the agency's action evinced rational reasoning and consideration of relevant factors, it must sustain the agency's action. *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974)).

## III.   DISCUSSION

In its protest, Golden IT challenges the USDA's evaluation and award decision as arbitrary, capricious, and otherwise not in accordance with law. Golden IT asserts that the USDA committed several errors in its evaluation of Golden IT's Phase 1 and Phase 2 submissions. Golden IT argues that it was prejudiced by the USDA's errors because, but for the USDA's faulty evaluation, it would have had a substantial chance of receiving a BPA under the RFQ because it would have received "high confidence" ratings for Phase 1 and Phase 2 and would not have received any unfavorable findings for its proposed pricing. As explained below, the Court finds that Golden IT has demonstrated that a portion of the USDA's findings in its Phase 1 and Phase 2 evaluations were arbitrary, capricious, and not in accordance with law. However, the Court also finds that Golden IT has not demonstrated that it was prejudiced by such errors because, even if Golden IT were to be assigned "high confidence" ratings for its Phase 1 and Phase 2 submissions, Golden IT would still not have a substantial chance to receive a BPA award because it cannot improve its price evaluation.

7

### A.      Golden IT's Challenges to the USDA's Phase 1 Evaluation

Golden IT attacks several aspects of the USDA's evaluation of its Phase 1 prior experience submission. [ECF 27] at 13-19. [5] As explained below, the Court finds that the USDA erred by treating Golden IT unequally when it noted Golden IT's lack of Salesforce and SharePoint experience, by failing to consider the experience of Golden IT's joint venture partner as required by procurement regulations, and by arbitrarily ignoring certain prior experience referenced by Golden IT.

### 1.      The USDA's Finding that Golden IT Has No Salesforce or SharePoint Experience

In its evaluation of Golden IT's prior experience, the USDA found that Golden IT had "[n]o Salesforce or SharePoint [experience]." AR 349. Golden IT argues that the USDA employed unstated criteria by singling out the Salesforce and SharePoint technologies when the RFQ only required experience with a "majority" of the technologies listed in Table 2. [ECF 27] at 21. Golden IT also argues that the USDA engaged in unequal treatment when it found that Golden IT's proposal did not include Salesforce or Sharepoint experience and did not apply the same finding to other offerors whose Phase 1 submissions similarly lacked such experience. *Id*. Furthermore, Golden IT asserts that this finding is irrational because Golden IT explicitly referenced SharePoint experience in its Phase 1 submission. *Id*. at 22. The Court finds that the USDA did not employ unstated evaluation criteria, but that it did treat Golden IT's proposal unequally and also irrationally conclude that Golden IT's proposal contained no SharePoint experience.

The USDA did not employ unstated evaluation criteria by noting that Golden IT lacked Salesforce and SharePoint experience. The RFQ required offerors to provide prior experience that demonstrates "success in providing Sustainment for Applications services of a comparable size, scope and complexity to the Sustainment services described in the [PWS]." AR 134. The PWS contained Table 2, which listed systems and web applications to be supported by the contractors and included specific references to Salesforce and SharePoint. AR 152-53. The record shows that the USDA focused on the Salesforce and SharePoint technologies in its Phase 1 evaluation, but this does not mean that the USDA used a significantly different basis in evaluating the proposals than was disclosed in the RFQ. *See Banknote Corp.*, 56 Fed. Cl. at 387 (stating that a protestor must show "the procuring agency used a significantly different basis in evaluating the proposals than was disclosed" to succeed on an unstated criteria claim). Both Salesforce and SharePoint were explicitly referenced in the list of technologies to be supported under a resultant BPA, *see* AR 152-53, and the USDA had the discretion to determine what prior experience is most advantageous. *See Lockheed Missiles & Space Co., Inc. v. Bentsen*, 4 F.3d 955, 959 (Fed. Cir. 1993) ("[A]gencies are entrusted with a good deal of discretion in determining which bid is the most advantageous to the [g]overnment.") (quotations omitted). Thus, the USDA did not employ unstated evaluation criteria when it pointed out that these technologies were missing from Golden IT's prior experience.

---

[5] All page numbers in the parties' briefings refer to the page number generated by the CM/ECF system.

However, the record demonstrates that the USDA treated Golden IT unequally when it noted Golden IT's lack of Salesforce and SharePoint experience in its evaluation and failed to note the same for other offerors with similar levels of Salesforce and SharePoint experience. Golden IT argues that the USDA engaged in unequal treatment because, although it found that Golden IT's Phase 1 submission lacked Salesforce and SharePoint experience, it did not make similar findings as to the Phase 1 submissions of Ventera Corporation ("Ventera") and Dynamo Technologies, LLC ("Dynamo"). [ECF 27] at 21. In response, the government argues that Ventera provided "examples of its experience with SharePoint when it stated it had experience supporting Visual Studio AR and MS SQL . . . both of which are SharePoint applications." [ECF 35] at 31 (citing AR 146-154). Notably, Golden IT also stated it had experience with Visual Studio AR and MS SQL. AR 270. Also, Dynamo's Phase 1 submission had references to Salesforce and SharePoint experience that were similar to Golden IT's, *see* AR 243-52, yet the USDA did not note a deficiency in its evaluation of Dynamo's prior experience, *see* AR 339.[6] Thus, Golden IT's Phase 1 submission contained prior experience with respect to the Salesforce and SharePoint technologies that was substantively indistinguishable from that contained in the proposals submitted by Ventera and Dynamo, yet the USDA noted a deficiency for Golden IT and not for Ventera and Dynamo.[7] This amounts to unequal treatment of Golden IT's Phase 1 submission. *See Office Design Grp.*, 951 F.3d at 1372 (providing that an offeror is treated unequally when "the agency unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals").

Additionally, the USDA was incorrect when it stated that Golden IT's Phase 1 submission contained no SharePoint experience. To the contrary, Golden IT's submission explicitly referenced experience with SharePoint. *See* AR 270-71 (listing various technologies with which Golden IT has experience, including SharePoint). Additionally, several of Golden IT's listed technologies are categorized as SharePoint applications. *See id*; AR 152-53. The Court will not accept a finding that is "in tension with, if not contradicted by, various aspects of [the] record." *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 35 (2010), *aff'd*, 649 F.3d 1320 (Fed. Cir. 2011).

2.   The USDA's Failure to Consider the Experience of Golden IT's Joint Venture Partner

---

[6] Golden IT explicitly reference SharePoint twice in its Phase 1 submission, *see* AR 270 (listing SharePoint as a technology used in its first submitted prior experience); AR 271 (listing SharePoint as a technology used in its second submitted prior experience), and Dynamo included only one reference to SharePoint and no references to Salesforce, *see* AR 243-52.

[7] The government attempts to distinguish Golden IT's experience with respect to Salesforce and SharePoint by stating that its experience was as a subcontractor whereas Ventera's and Dynamo's experience was as a prime contractor. *See* [ECF 35] at 31-32. The Court is not persuaded by this argument because the record demonstrates that Golden IT is neither a subcontractor nor a prime contractor but rather a joint venture entity, as explained in Golden IT's cover letter of its Phase 1 submission. *See* AR 268.

For its first listed prior experience, Golden IT listed two BPAs. *See* AR 269-74. In its evaluation, the USDA stated that for "1 of the 2 BPAs they reference . . . Harmonia Holdings Group LLC [was] the prime," and "[i]t was unclear if Golden IT was a sub-contractor (they don't say)?" AR 349. The USDA further stated that it believed that Golden IT was a subcontractor on the second listed prior experience but that Golden IT made it appear that it was the prime. *Id.* Golden IT argues that the USDA made unlawful findings regarding its prior experience because the USDA failed to consider the experience of its joint venture partner, Harmonia Holdings Group LLC ("Harmonia"), as required by 13 C.F.R. § 125.8(e). [ECF 27] at 25. The Court agrees and finds that the record does not demonstrate that the USDA considered the experience of Golden IT's joint venture partners as required by the regulation.

13 C.F.R. § 125.8(e) provides:

> When evaluating the capabilities, past performance, experience, business systems and certifications of an entity submitting an offer for a contract set aside or reserved for small business as a joint venture established pursuant to this section, *a procuring activity must consider work done and qualifications held individually by each partner to the joint venture as well as any work done by the joint venture itself previously*. A procuring activity may not require the protégé firm to individually meet the same evaluation or responsibility criteria as that required of other offerors generally. The partners to the joint venture in the aggregate must demonstrate the past performance, experience, business systems and certifications necessary to perform the contract.

13 CFR § 125.8(e) (emphasis added). Under the plain language of the regulation, when an agency is evaluating the past performance or experience of an offeror submitting an offer as a small business joint venture, the agency must consider the past performance and experience of the joint venture partners, as well as that of the joint venture itself.[8] *See Goodwill Indus. of S. Fla., Inc. vs. United States*, 162 Fed. Cl. 160, 192 (2022) ("When the text is unambiguous, the court need only read the plain language of the regulation.").

Here, the USDA erred by not considering Harmonia's past performance experience in its evaluation of Golden IT's prior experience. In the cover letter to its Phase 1 submission, Golden IT clearly stated that "Golden is a Small Business Administration (SBA) All Small Business Mentor Protégé Program (ASMPP) approved Mentor Protégé 8(a) Joint Venture (JV) between

---

[8] The Court's reading also aligns with the regulatory history of 13 C.F.R. § 125.8(e) and the language of the Small Business Act. When implementing the latest version of the rule, the Small Business Administration ("SBA") noted that "[t]he reason that any small business joint ventures with another business entity . . . is because it cannot meet all performance requirements by itself and seeks to gain experience through the help of its joint venture partner[.]" 85 Fed. Reg. 66146, 66167 (Oct. 16, 2022). Furthermore, the Small Business Act requires "if the joint venture does not demonstrate sufficient capabilities or past performance to be considered for award of a contract opportunity, the head of the agency shall consider the capabilities and past performance of each member of the joint venture as the capabilities and past performance of the joint venture." 15 U.S.C. § 644(q)(1)(C). The SBA's comments in the federal register and the language of the Small Business Act support the Court's conclusion that an agency must consider the past performance experience of a joint venture partner.

protégé and managing partner Sara Software Systems, LLC (Sara) and mentor Harmonia Holdings Group, LLC (Harmonia)." AR 268. As such, the USDA was on notice that Golden IT was submitting its offer as a joint venture. With this information, under 13 C.F.R. § 125.8(e), the USDA should have considered Harmonia's prior experience when it was evaluating the prior experience of Golden IT. While the evaluation shows that the USDA recognized that Harmonia was listed as the prime contractor on the referenced BPAs, it also shows that the USDA was confused as to whether Golden IT itself served as a subcontractor on the BPA. *See* AR 349. This apparent confusion demonstrates that the USDA failed to understand the relationship between Golden IT and Harmonia and, as a result, also failed to properly consider Harmonia's experience as required by 13 C.F.R. § 125.8(e). Accordingly, the USDA improperly evaluated Golden IT's prior experience.[9]

      3.      <u>The USDA's Failure to Consider the Magnitude of Golden IT's Prior Experience</u>

      As noted above, the first prior experience that Golden IT included in its submission referenced two BPAs. Golden IT valued these BPAs at a magnitude or dollar value of $49,382,841. AR 269. The USDA found that the first BPA was "technically outside of the 3 years requirement (recent)" and that "only 3 task[] order[s] were within the past 3 years" as required by the RFQ. AR 349. The USDA then concluded that the three task orders were "valued at $9,305,318." *Id.* Based upon this, the USDA found that Golden IT had not established "[m]agnitude ($ value) . . .  with this experience." *Id.* The USDA further stated that "the other BPA [was] within the 3 years." *Id.* However, the USDA did not assign a value to this BPA. *See id.*

      Golden IT argues that the USDA's evaluation of this prior experience was "unreasonable and irrational" because, in addition to the three task orders totaling $9,305,318, which were performed in the past three years, the second BPA contained three recent task orders, which the agency "completely ignored." [ECF 27] at 24. According to Golden IT, the six task orders together are valued at "roughly $37m," and the USDA should not have found its experience "to be non-recent and lacking in magnitude." *Id.*

      The USDA's finding with respect to the magnitude of Golden IT's first prior experience was arbitrary and capricious. In evaluating Golden IT's first prior experience, the USDA noted that the first BPA included three task orders that fell within the three-year requirement, and that these task orders were valued at $9,305,318. AR 349. However, while the USDA stated that "[t]he other BPA is within the 3 years[,]" it is unclear if the USDA actually considered the value of the task orders under the second BPA. *See* AR 349. The USDA makes no mention of the second BPA's value and does not explain why it did not contribute to its evaluation of the magnitude of this experience. *See id.* Had the USDA added the value of the recent task orders under the second BPA to the value of the three recent task orders under the first BPA, it

---

[9] The Court is not persuaded by the government's argument that "Golden IT failed to demonstrate that it served as a prime contractor on a project." [ECF 35] at 30. Golden IT, as a mentor-protégé joint venture, was not required by law or by the terms of the RFQ to identify its role as a subcontractor or prime contractor. Nor could it have done so. Golden IT itself was neither a prime contractor nor a subcontractor with respect to its referenced prior experience.

presumably would have arrived at an increased overall value, which would be closer to the estimated value of the BPA to be awarded under the RFQ. As such, the USDA has not provided a rational basis for its finding that Golden IT has not established the appropriate magnitude or dollar value with this experience. *See Impresa*, 238 F.3d at 1333; *Mortg. Contracting Servs., LLC*, 153 Fed. Cl. at 125-26 ("[A]lthough highly deferential, the court's review of an agency's past performance evaluation is neither an automatic endorsement of the agency's actions nor tolerant of observable mistakes[.]")

    4. <u>The USDA's Finding that Golden IT's Level of Programming Experience Was Not Detailed</u>

   Also in its Phase 1 evaluation, the USDA found that Golden IT's "level of programming [was] not detailed." AR 349. Golden IT argues that this finding was based upon unstated evaluation criteria because the word "programming" does not appear in the RFQ. [ECF 27] at 17. The Court finds this argument unpersuasive.

   The RFQ provided that "[t]he contractor shall serve as the source of technical expertise with regards to maintaining and improving the USDA application environment," and "shall maintain and manage USDA database environments as well as support minor database changes." AR 123. Additionally, it stated that "the contractor shall provide Subject Matter Expertise (SME) for all database environments for subject systems, including performance monitoring and tuning, troubleshooting, configuration management, and planning" and the "SME may also be asked to provide expert advice and analysis in other areas including independent review, evaluation and recommendations of proposed database changes, implementations, configurations, and operations." *Id.*

   While the word "programming" is not contained in the RFQ, it was rational for the USDA to consider programming experience in its evaluation of the offeror's respective prior experience because "programming" is intrinsic to the scope of services described in the RFQ. *See Banknote Corp.*, 56 Fed. Cl. at 387 ("[I]t is well-settled that a solicitation need not identify each element to be considered by the agency during the course of the evaluation where such element is intrinsic to the stated factors.") (quotation marks omitted). Programming is a necessary part of implementing, configuring, maintaining, and troubleshooting the software applications to ensure that the functionality of the software meets the USDA's requirements. Accordingly, the USDA did not act arbitrarily in its evaluation of Golden IT's programming experience.

    5. <u>The USDA's Failure to Consider Golden IT's FNS Experience</u>

   Golden IT argues that, in the USDA's evaluation, it is "unclear how, or even if, [its] FNS experience factored into the [USDA's] decision to assign Golden IT a Some Confidence rating." [ECF 27] at 25. It asserts that "the [USDA] informed offerors that FNS experience 'would give [USDA] a higher confidence of a vendor[,]'" and that the USDA "fail[ed] to follow the terms of the [RFQ]" when it did not give Golden IT a high confidence rating based on its prior FNS experience. *Id.* The Court finds this argument meritless.

Golden IT supports its argument with the USDA's response to a question submitted by an offeror. The offeror asked:

> Is prior USDA FNS prime experience required and will that be used as an evaluation factor for Phase 1? Do firms with FNS Prime experience have a more favorable chance of making it to Phase 2 than those without ANY USDA FNS experience?

AR 93. In response, the USDA stated:

> Naturally if we see FNS experience it would give us a higher confidence of a vendor. Doesn't mean another vendor cannot also receive a high confidence too.

*Id*. Nothing in the USDA's response guarantees that the USDA will assign an offeror a "high confidence" rating or otherwise obligates the USDA to provide an offeror with a "high confidence" rating simply because the offeror includes FNS experience in its prior experience submission. The USDA's response simply states that the USDA will have *higher* confidence in an offeror who demonstrates prior FNS experience. Therefore, the USDA did not violate the terms of the RFQ by not assigning a "high confidence" rating to Golden IT even though it included FNS experience in its Phase 1 submission.

### B.    Golden IT's Challenges to the USDA's Phase 2 Evaluation

Golden IT also attacks several aspects of the USDA's evaluation of its Phase 2 technical and management approach submission and price quote. [ECF 27] at 26-34. As explained below, the Court finds that the USDA acted arbitrarily by finding that Golden IT failed to address key issues and failed to provide a level of effort break-out.

#### 1.    The USDA's Evaluation of Golden IT's Technical Approach

##### a.    The USDA's Finding that Golden IT Lacks Support for Its Salesforce Experience

The USDA found the following with respect to Golden IT's technical approach: "The vendor support for specific software is not shown in all instances. For example, Salesforce support does not explain how much development and maintenance support for Salesforce app was done." AR 1155. Golden IT argues that the USDA "again applied unstated criteria by again faulting Golden IT for its lack of specific support for Salesforce" because "the [USDA] made clear that all 148 technologies in the PWS [] need be addressed; instead, only a "majority" required discussion." [ECF 27] at 27 (emphasis omitted). Golden IT also argues that the USDA engaged in unequal treatment when it found that Golden IT did not provide support for its Salesforce experience and failed to find a similar concern with respect to another offeror "that did not mention Salesforce at all in its proposal." *Id.* The Court finds that the USDA did not

employ unstated evaluation criteria by noting that Golden IT lacked support for its Salesforce experience and that the USDA did not engage in an unequal evaluation.

As noted above, to succeed on an unstated evaluation criteria claim, Golden IT must show that the procuring agency used a significantly different basis in evaluating the proposals than was disclosed. *See Banknote Corp.*, 56 Fed. Cl. at 387. For technical approach, the RFQ instructed as follows:

> The Vendor shall submit a technical approach that demonstrates a substantive understanding of the scope, complexity associated with the objectives described in the BPA Performance Work Statement (PWS). The quote shall present the Vendor's approach in a way that demonstrates a clear understanding of, and clear plan to achieve all objectives and performance metrics as outlined in the BPA Performance Work Statements (PWS).

> Also, to be included is a substantial narrative that the vendor has first ha[n]d experience using a majority of the technology categories listed in Table 2 of the PWS. Vendor [should] address[] the experience managing[,] operating[,] and maintaining custom applications and databases already in production and experience with transition. This experience will demonstrate the most capable vendors.

AR 136. In Golden IT's proposed technical approach, it included a table demonstrating its experience with the technologies listed in Table 2. *See* AR 765-71. Next to Salesforce, Golden IT stated that it "supported FPAC's ERC systems of SAP and Salesforce, and via ETL extracted ERP data to load into the EDW." AR 769. In its evaluation, the USDA identified this as *one example* of where Golden IT failed to provide a substantial narrative of its experience supporting the specific software listed in the RFQ. *See* AR 1155. The USDA's finding was not based on Salesforce alone. Thus, the USDA did not use a significantly different basis in evaluating Golden IT's technical approach than was disclosed in the RFQ when it found that Golden IT's support for specific software was not shown in all instances. Rather, the USDA had a rational basis for this finding because Golden IT failed to provide the level of detail called for by the RFQ. *See Westech Int'l., Inc. v. United States*, 79 Fed. Cl. 272, 296 (2007) (stating that the offeror "carries the burden of presenting an adequately written proposal, and an offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably.")

To succeed on its unequal treatment claim, Golden IT must show that the USDA downgraded its proposal for a deficiency that was substantively indistinguishable or nearly identical from that contained in other proposals. *See Office Design Grp.*, 951 F.3d at 1372. Golden IT argues that the USDA engaged in unequal treatment when it faulted Golden IT's proposal for its lack of support for its Salesforce experience and did not similarly fault a proposal submitted by another offeror, Capital Technology Group, LLC ("Capital"), which did not address Salesforce at all. [ECF 27] at 28. However, Golden IT fails to demonstrate that its proposed technical approach was substantively

indistinguishable or nearly identical to Capital's proposed technical approach. Although Golden IT specifically included Salesforce experience in its technical approach, the USDA found that it failed to provide adequate support for that experience. *See* AR 769. On the other hand, Capital did not include Salesforce experience in its technical approach—which distinguishes its technical approach from Golden IT's approach and makes the USDA's finding that Golden IT's technical approach lacks support for its Salesforce experience inapplicable to Capital's technical approach.

> b.   The USDA's Finding that Golden IT Did Not Address Key Issues

The USDA also found that Golden IT's technical approach "[d]id not address key issues[.]" AR 1155. Golden IT argues that this finding was irrational because the RFQ contained "no identifiable 'key issues' to be addressed." [ECF 27] at 28. The Court finds that the USDA did not have a rational basis for finding that Golden IT's technical approach "[d]id not address key issues[.]"

"Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency[] but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." *Glenn Def. Marine (Asia), PTE Ltd.*, 105 Fed. Cl. at 559 (citing *State Farm*, 463 U.S. at 43). The Agency must present a full and reasoned explanation of its decision for the reviewing court to perform meaningful review. *Mortg. Contracting Servs., LLC*, 153 Fed. Cl. at 121 (citing *In re Sang Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002)).

In this instance, the USDA only provides the conclusive statement that Golden IT "[d]id not address key issues" without further explanation. While the RFQ required that offerors submit a technical approach demonstrating a clear understanding of the objectives described in the PWS and a substantial narrative explaining its experience with the technologies listed in the PWS, it did not contain the term "key issues," nor did it indicate to the offerors that the USDA would place greater emphasis on certain PWS objectives. *See* AR 120-40. Without a definition of "key issues" in the RFQ, or an explanation in the evaluation findings of what specific issues the USDA determined were not addressed by Golden IT's technical approach, the USDA has not provided a rational basis for this finding. *See Mortg. Contracting Servs., LLC*, 153 Fed. Cl. at 121.

> c.   The USDA's Finding that Golden IT's Proposal Was Not Specific to FNS

Finally, in evaluating Golden IT's technical approach, the USDA found that the "[p]roposal was very general and not specific to FNS." AR 1155. Golden IT argues that this finding was arbitrary and irrational and should be disregarded because "proposals were not required to be specific to FNS" under the RFQ. [ECF 27] at 29. The Court finds that the USDA had a rational basis for this finding.

The RFQ stated that "the main use of the BPAs will come from Procurement Operations Division (POD) purchasing for FNS." AR 122 (emphasis in original). Additionally, the RFQ went into detail about the FNS, its mission, and the programs it administers. *Id*. It also specified certain databases utilized by the FNS, AR 123, and it included a Sample Call Order for pricing purposes titled, "FNS OIT Sustainment Operations for Applications," AR 146. The RFQ clearly placed offerors on notice that the primary use of the services was for FNS and that the proposals would be evaluated with respect to each offeror's ability to perform the necessary sustainment operations services for the technologies and applications used by FNS. In this context, the USDA's finding that Golden IT's proposal was generic and not specific to FNS was not arbitrary.

### 2.   The USDA's Evaluation of Golden IT's Management Approach

#### a.   The USDA's Finding that Golden IT's Quality Control Plan ("QCP") Does Not Address Subcontractors

In evaluating Golden IT's management approach, the USDA found that Golden IT's "[QCP] does not identify quality control for subcontractor work." AR 1155. Golden IT argues that this finding was irrational because "Golden IT did not propose a subcontractor" and "[t]here is no requirement that the [QCP] include plans for subcontract work when there are no subcontractors." [ECF 27] at 30-31. The Court finds that the USDA provided a rational basis for this finding.

For management approach, the RFQ provided that:

> The Vendor shall submit a management plan for the requirements (tasks, subtasks, deliverables, etc.) outlined in the PWS. This plan shall provide a clear chain of responsibility, quality control plan, cost control method, contract administration, and adequate, qualified staff resources. The management plan shall provide:
>
> - [. . .]
>
> - The Contractor shall submit the [QCP]. The vendor (including subcontractors) must demonstrate appropriate and sufficient procedures, facilities, and staff to meet the performance requirement outlined in the task order PWS.

AR 136. Golden IT concedes that its QCP did not identify quality control measures for subcontractors but maintains that it was not required to do so because it did not propose the use of a subcontractor. [ECF 27] at 30-31. However, as part of its management approach, Golden IT indicated that, upon award, it would, among other things, "finalize subcontracting agreements." AR 783. This statement suggests that Golden IT intended to enter into subcontracting agreements as part of its performance and contradicts Golden IT's assertion that it did not propose the use of subcontractors. Accordingly, the USDA

had a rational basis for finding that Golden IT's QCP did not "identify quality control for subcontractor work." AR 1155.

> b.   The USDA's Finding that Golden IT's Proposal Does Not Address Sample Task Order Requirements

The USDA found that Golden IT's "proposal does not address the sample task order requirements in sufficient detail to determine how they would support this task." AR 1155. Golden IT argues that the USDA's failure to "describe the meaning of sufficient detail" or identify the missing and underdeveloped details "renders its fin[d]ing irrational." [ECF 27] at 31. The Court also finds that the USDA had a rational basis for this finding.

The RFQ required that the offerors' management approach "demonstrate appropriate and sufficient procedures, facilities, and staff to meet the performance requirement outlined in the task order PWS." AR 136. It appears that the USDA determined that Golden IT's proposed management approach failed to provide enough detail for the USDA to feel confident that Golden IT would be able to meet this performance requirement. As the offeror, Golden IT "carries the burden of presenting an adequately written proposal, and [its] mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably." *Westech Int'l., Inc.*, 79 Fed. Cl. at 296. This determination is within the discretion of the USDA, and the Court will not second guess it. *See E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (noting that arguments that "deal with the minutiae of the procurement process in such matters as technical ratings . . . involve discretionary determinations of procurement officials that a court will not second-guess.").

> c.   The USDA's Finding that Golden IT's Proposal Does Not Address Level of Effort

The USDA found that Golden IT "[did] not break out level of effort for other agency tasks making it difficult to determine what level of support they provided compared to a prime or subcontractor." AR 1155-56. Golden IT argues that this finding is arbitrary because "[i]t is difficult to understand [the USDA's] concern here, or even what it is referring to." [ECF 27] at 31. Further, it argues that the RFQ "does not require a 'break out level of effort." *Id.* The Court concludes that this finding is arbitrary because it lacks a reasoned explanation that would enable the Court to perform a meaningful review. *See Mortg. Contracting Servs., LLC*, 153 Fed. Cl. at 121.

As the government argues, it is conceivable that this finding means that the USDA determined that Golden IT "did not adequately explain what tasks they would be responsible for completing [in] the sample call order, versus a subcontractor's tasks." [ECF 35] at 41. However, the Court will not rely upon post hoc explanations for the USDA's decisions. *Great Lakes Dredge & Dock Co. v. United States,* 60 Fed. Cl. 350, 358 (2004) ("After-the-fact rationalizations for agency action should be rejected, and

legal arguments for agency actions must find support in the administrative record."); *see also Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 102 (2011) ("Post hoc declarations and arguments will be discounted or disregarded."). If it was the case that Golden IT did not adequately explain the division of tasks between it and its subcontractors, then the USDA should have stated its concern more clearly. As written, this finding is unclear. The USDA does not explain what "other agency tasks" it is referring to. Additionally, it is unclear whether the USDA is concerned with the level of support that Golden IT provided in the past or with the level of support that it would provide in the future under the sample call order. While "[a]n explicit explanation is not necessary . . . where the agency's decisional path is reasonable discernible[,]" this finding is arbitrary because it does not provide a reasoned explanation that enables the Court to understand the USDA's rationale for its decision. *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1315 (Fed. Cir. 2021).

3.    The USDA's Evaluation of Golden IT's Price

In its evaluation of Golden IT's price quote, the USDA found the following:

> The evaluation team recognized that Golden IT['s] quoted price for the example call was significantly lower than the IGCE and was the second lowest of the vendors. It gave the impression of not acquiring the correct caliber of staff required for this requirement. In looking at the positions offered, they were generally in line but in their discount of the rates-it was so high that it would be a concern if the vendor could retain that caliber of staff at those rates (moderate risk).

AR 1165. Golden IT argues that this finding was arbitrary and irrational because although its "price was lower than the average [proposed price of all awardees]—[] it was hardly lower than the [RFQ's] expected IGCE."[10] [ECF 27] at 33. The Court finds that the USDA had a rational basis for concluding that Golden IT's price quote was significantly lower than the IGCE and presented a moderate risk.

The RFQ stated that "[p]rice quotes shall be evaluated by comparing proposed prices received in response to the solicitation and to the [IGCE]." AR 137. The IGCE for the sample call order was $1,385,060.00. AR 1158, 1162, 1657. Golden IT proposed a price quote for the sample call order of [* * *], AR 785, which is [* * *] lower than the IGCE. On this basis, it was reasonable for the USDA to consider Golden IT's proposed price quote "significantly lower" than the IGCE. Further, the USDA's determinations that Golden IT's lower price quote "gave the impression of not acquiring the correct caliber of staff" and that it created concerns with Golden IT's ability to retain staff were also reasonable. Because the USDA provided a reasonable explanation, the Court finds that the USDA's evaluation of Golden IT's price quote was not arbitrary or irrational. *See Advanced Data Concepts*, 216 F.3d at 1058.

---

[10] To advance this argument, Golden IT relies upon the USDA's response to an offeror's question about the IGCE for the sample call order, which stated that the "[m]agnitude is from $1 Million - $1.5 Million." AR 171.

**C.      Whether Golden IT was Prejudiced by the USDA's Errors**

Having found that the USDA acted arbitrarily, capriciously, and contrary to the law with respect to certain portions of its evaluation, the Court now considers whether Golden IT was prejudiced by the USDA's errors. *See Bannum*, 404 F.3d at 1351 (stating that once a court finds that an agency acted arbitrarily, the court "proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct"). For Golden IT to prevail, it "must show prejudicial error." *Glenn Def. Marine (Asia), PTE, Ltd. v. United States*, 720 F.3d 901, 908 (Fed. Cir. 2013). There is no presumption of prejudice upon a showing that an agency acted irrationally. *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021). To establish prejudice, Golden IT must show that "but for the alleged error, there was a substantial chance that [it] would receive an award—that it was within the zone of active consideration." *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996)).

The Court finds that Golden IT has not demonstrated that it was prejudiced by the USDA's errors. The USDA assigned Golden IT "some confidence" ratings for its Phase 1 and Phase 2 submissions. AR 1163. The USDA assigned the eight offerors selected for BPA award "high confidence" ratings. AR 1163. As explained above, the Court determined that the USDA made several findings in its Phase 1 and Phase 2 evaluation of Golden IT's submissions that were arbitrary, capricious, and contrary to the law. If the USDA were to conduct a reevaluation of Golden IT's Phase 1 and Phase 2 submissions based on the Court's decision and the reevaluation were to result in a revised tabulation of favorable and unfavorable findings, it is possible that Golden IT would receive "high confidence" ratings, like the selected offerors. Since the record does not illustrate how the USDA might attribute revised findings to its confidence ratings for each phase, the Court cannot conclude that Golden IT would not have a substantial chance of being assigned "high confidence" ratings for its Phase 1 and Phase 2 submissions.

However, even if Golden IT were to be assigned "high confidence" ratings based on a reevaluation, Golden IT would still not have a substantial chance to receive a BPA award because it cannot improve its price evaluation. The Court determined that the USDA rationally found that Golden IT's price quote presented a "moderate risk." In support of its evaluation of Golden IT's price quote, the USDA explained that the proposed discount to Golden IT's BPA labor rates "was so high that it would be a concern if [Golden IT] could retain that caliber of staff at those rates" and "[i]t gave the impression of not acquiring the correct caliber of staff required for this requirement." AR 1165. The USDA's unfavorable evaluation of Golden IT's price quote is critical because, for all offerors selected for award, the USDA stated that their proposed pricing "showed that they understood the requirement and their pricing was aligned." AR 1164. It does not appear that the USDA assigned any level of risk to the respective price quotes submitted by the eight selected offerors. *See* AR 1160-65.

The RFQ provided that the USDA would use the Phase 1 and Phase 2 confidence ratings and the proposed pricing to perform the "[p]erformance [p]rice [t]rade-[o]ff." *See* AR 139-40. While the RFQ provided that prior experience and technical and management approach are more important than price, price was still an evaluation factor that the USDA considered in its trade-off analysis. *Id.* The record shows that the USDA determined that the eight offerors selected for

award represented "the best overall value, and lowest risk to the government" based on the combination of their "high confidence" ratings and their proposed pricing. AR 1163. In the Source Selection Decision Memorandum, the SSA agreed with awarding BPAs to the "reasonably priced highest rated" offerors because these offerors represented the best value to the government. AR 1666. In sum, each of the offerors selected by the USDA for BPA award received "high confidence" ratings for prior experience and technical and management approach *and* favorable findings for their proposed pricing. Because Golden IT does not have a substantial chance to improve its price evaluation and eliminate the risk associated with its price quote, Golden IT has not demonstrated that, but for the USDA's errors, it would have a substantial chance at receiving a BPA award.

## IV.   INJUNCTIVE RELIEF

Golden IT requests that the Court enter a permanent injunction enjoining performance of the BPAs based on the USDA's evaluation and source selection decision. [ECF 27] at 37. Golden IT also requests that the Court require the USDA to perform a proper evaluation and make a reasonable award decision. *Id.* When deciding if a permanent injunction is warranted, the Court considers whether: "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)). Achieving success on the merits "is a necessary element for a permanent injunction." *Dell Fed. Sys. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018). In this case, Golden IT has not succeeded on the merits because it has not demonstrated that it was prejudiced by the USDA's errors. Therefore, Golden IT is not entitled to a permanent injunction.

## V.   CONCLUSION

For the reasons stated above, Golden IT's motion for judgment on the administrative record is **DENIED** and the government's and ITCON's cross-motions for judgment on the administrative record are **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge